# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAP-XX, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-849-CFC-SRF |
| | ) | |
| IOXUS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT CLAIM CONSTRUCTION BRIEF

OF COUNSEL:

Jason P. Mueller
Michelle Chatelain Fullmer
ADAMS AND REESE LLP
701 Poydras St., Ste. 4500
New Orleans, LA 70139
(504) 581-3234

Chris P. Perque
ADAMS AND REESE LLP
1221 McKinney St., Ste. 4400
Houston, TX 77010
(713) 308-0167

Maia T. Woodhouse
ADAMS AND REESE LLP
Fifth Third Center
424 Church Street, Suite 2700
Nashville, TN 37219
(615) 259-1085

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff CAP-XX, Ltd.*

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:                        Jack B. Blumenfeld (#1014)
                                   Michael J. Flynn (#5333)
Erik B. Milch                      1201 North Market Street
COOLEY LLP                         P.O. Box 1347
11951 Freedom Drive                Wilmington, DE 19899
Reston, VA  20190                  (302) 658-9200
(703) 456-8000                     jblumenfeld@mnat.com
                                   mflynn@mnat.com
Stephen Crenshaw
COOLEY LLP                         *Attorneys for Defendant*
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-240
(202) 842-7800

Dated:  September 30, 2019

**TABLE OF CONTENTS**

INTRODUCTION………………………………………………...…………...1

1.   CAP-XX's Opening Position…………………………….……...1

2.   Ioxus's Answering Position…………………………….……….3

3.   CAP-XX's Reply Position…………………………………….4

4.   Ioxus's Sur-Reply Position………………………...……………4

BACKGROUND………………………………………………...……….6

1.   CAP-XX's Opening Position…………………………………6

    I.   AGREED-UPON CONSTRUCTIONS………………………10

        A.   CAP-XX's Opening Position…………….…………10

        B.   Ioxus' Answering Position……………….…………10

  II.   WAIVER……………………………………………………10

      A.   CAP-XX's Opening Position…………………………10

      B.   Ioxus's Answering Position…………………..…………14

      C.   CAP-XX's Reply Position…………………………………14

      D.   Ioxus's Sur-Reply Position………………………...………16

  III.   DISPUTED CONSTRUCTIONS………………………...…16

      A.   "volumetric figure of merit" / "gravimetric figure of merit" / "figure of merit"………………………………...…………16

        1.   CAP-XX's Opening Position…………………….……17

        2.   Ioxus's Answering Position……………………………18

i

3.      CAP-XX's Reply

Position………………………………………..………….20

a.      Ioxus Attempts to Delegate Claim Construction
to the Jury………………………………….………21

b.      CAP-XX's Constructions Are Supported By
the Specification…………………………...…………25

4.  Ioxus's Sur-Reply Position…………………..……………26

B.      "gravimetric power maximum" / "volumetric power
maximum"……...……………………………………………….28

1.      CAP-XX's Opening Position…………………..………….28

2.      Ioxus's Answering Position…………………………….29

3.      CAP-XX's Reply Position……………………………..29

4.      Ioxus's Sur-Reply Position…………………………..…30

C.      "Maximum Operating Voltage"…………..……………..…30

1.      CAP-XX's Opening Position…………………..………….30

2.      Ioxus's Answering Position…………………………….33

3.      CAP-XX's Reply Position…………………………..…33

4.      Ioxus's Sur-Reply Position…………………………..…34

D.      "greater than about 3.2 Watts/cm3" / "range of about 3.2 Watts/
cm3 to 4 Watts/cm3"……………………………………...……….34

1.      CAP-XX's Opening Position…………..……………34

a.      "greater than about 3.2 Watts/cm3"……………..34

b.      "range of about 3.2 Watts/cm3

to 4 Watts/cm3"………………………………..…35

2.      Ioxus's Answering Position……………………………36

3.      CAP-XX's Reply Position……………………..……37

4.      Ioxus's Sur-Reply Position……………………….…39

E.      "about"…………………………………………..………40

1.      CAP-XX's Opening Position……………….…………41

2.      Ioxus's Answering Position……………………………42

3.      CAP-XX's Reply Position……………………..……42

4.      Ioxus's Sur-Reply Position…....………………………43

IV.      INDEFINITENESS……………………………………………44

1.      CAP-XX's Opening Position……………….…………44

2.      Ioxus's Answering Position……………………………49

a.      "volumetric figure of merit" / "gravimetric figure
of merit" / "figure of merit" / "gravimetric power
maximum" / "volumetric power maximum" /
"maximum operating voltage"…………..…………49

b.      "about"……………………………….………51

3.      CAP-XX's Reply Position………………...……....…53

4.      Ioxus's Sur-Reply Position……………………………55

V.    CONCLUSION………………………………………...………………55

        1.    CAP-XX's Opening Position…………..……………55

        2.    Ioxus's Answering Position……………………………55

        3.    CAP-XX's Reply Position……………………….…..…55

        4.    Ioxus's Sur-Reply Position…………………….………55

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
  811 F.3d 1334 (Fed. Cir. 2016) .........................................................46

*Alcon Research, Ltd. v. Barr Labs. Inc.*,
  No. 09-CV-0318-LDD, 2011 WL 3901878 (D. Del. Sept. 6, 2011)..................54

*Allergan Inc. v. Cayman Chem. Co.*,
  No. SACV0701316JVSRNBX, 2010 WL 11470342 (C.D. Cal.
  Jan. 12, 2010)................................................................................11

*Allergan, Inc. v. Teva Pharm. USA, Inc.*,
  No. 2:15-CV-1455-WCB, 2016 WL 7210837 (E.D. Tex. Dec. 13,
  2016) ..........................................................................................39

*Amgen, Inc. v. Chugai Pharma. Co., Ltd.*,
  927 F.2d 1200 (Fed. Cir. 1991) .........................................................52

*Ansell Healthcare Prod. LLC v. Reckitt Benckiser LLC*,
  No. 15-CV-915 (RGA), 2017 WL 1021844 (D. Del. Mar. 16,
  2017) ..........................................................................................53

*Apple Inc. v. Motorola, Inc.*,
  No. 1:11-cv-08540, 2012 WL 8123793 (N.D. Ill. Mar. 12, 2012) ....................19

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012) .........................................................10

*Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac
  Solutions, P.C.*,
  482 F.3d 1347 (Fed. Cir. 2007) .........................................................12

*Constant Compliance, Inc. v. Emerson Process Mgmt. Power &
  Water Solutions, Inc.*,
  598 F. Supp. 2d 842 (N.D. Ill. 2009).............................................. 12-13

*Control Resources, Inc. v. Delta Elecs., Inc.*,
  133 F.Supp.2d 121 (D. Mass. 2001)....................................................19

*Cook Biotech Inc. v. ACell, Inc.*,
  460 F.3d 1365 (Fed. Cir. 2006) ................................................................. 18-19

*Dade Behring Marburg GmbH v. Biosite Diagnostics, Inc.*,
  No. CIV. A. 97-501 MMS, 1998 WL 552962 (D. Del. July 24,
  1998) ..........................................................................................................23

*DePuy Synthes Prod., LLC v. Globus Med., Inc.*,
  No. CA 11-652-LPS, 2013 WL 1897833 (D. Del. May 7, 2013) .....................54

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*,
  803 F.3d 620 (Fed. Cir. 2015) ................................................................. 49-50

*Ecolab, Inc. v. Envirochem, Inc.*,
  264 F.3d 1358 (Fed. Cir. 2001) ........................................................................41

*Eon Corp. IP Holdings v. Silver Spring Networks*,
  815 F.3d 1314 (Fed. Cir. 2016) ........................................................................24

*Foods, LLC v. Hamilton Beach Brands, Inc.*,
  388 F. Supp. 3d 362 (D. Del. 2019)..................................................................53

*Forest Labs., Inc. v. Teva Pharms. USA, Inc.*,
  2017 WL 6311688 (Fed. Cir. 2017) ..................................................................48

*Genentech, Inc. v. Amgen, Inc.*,
  Case No. 17-1407-CFC, D.I. 345 (D. Del April 9, 2019) ..................................49

*Geneva Pharma., Inc. v. GlaxoSmithKline PLC*,
  349 F.3d 1373 (Fed. Cir. 2003) ........................................................................51

*Golden Bridge Tech., Inc. v. Apple Inc.*,
  758 F.3d 1362 (Fed. Cir. 2014) ........................................................................25

*HIP, Inc. v. Hormel Foods Corp.*,
  Case No. 18-615-CFC, D.I. 146 (D. Del April 2, 2019) ...................................49

*Holland Furniture Co. v. Perkins Glue Co.*,
  277 U.S. 245 (1928)..........................................................................................47

*Industry Access Inc. v. Core-logic, Inc.*,
  Case No. SACV 11-473-JLS, 2014 WL 12775082 (C.D. Cal. July
  8, 2014) ...........................................................................................................13

*Info. Tech. Innovation, LLC v. Motorola, Inc.*,
   391 F. Supp. 2d 719 (N.D. Ill. 2005) ............................................................11, 13

*Integra LifeSciences Corp. v. HyperBranch Med. Tech. Co.*,
   No. 15-819-LPS-CJB, 2017 WL 5172396 (D. Del Nov. 8, 2017) ....................52

*Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*,
   540 F. Supp. 2d 1233 (M.D. Fla. 2008)...................................................... 43-44

*Leader Techs., Inc. v. Facebook, Inc.*,
   770 F. Supp. 2d 686 (D. Del. 2011), aff'd, 678 F.3d 1300 (Fed.
   Cir. 2012) .......................................................................................................11

*Lifescan Scotland, Ltd. v. Shasta Techs., LLC*,
   No. 11-CV-04494-WHO, 2014 WL 11206411 (N.D. Cal. Nov. 10,
   2014) ..............................................................................................................45

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996)........................................................................................22

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ..........................................................................22

*Merck & Co. v. Teva Pharm. USA, Inc.*,
   395 F.3d 1364, 1370 (Fed. Cir. 2005) ...................................................39, 41, 43

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.*,
   288 F. Supp. 2d 601 (D. Del. 2003)..................................................................23

*MorphoTrust USA, LLC v. United States*,
   132 Fed. Cl. 419 (2017) ..................................................................................45

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S.Ct. 2120 (2014).....................................................................................44

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
   521 F.3d 1351 (Fed. Cir. 2008) ........................................................ 22, 23-24, 26

*Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs.*,
   476 F.3d 1321 (Fed. Cir. 2007) .......................................................................43

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.*,
   No. 02-148 GMS, 2003 WL 124149 (D. Del. Jan. 13, 2003) ............................44

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ......................................................22, 36, 38, 39

*Pipe Liners, Inc. v. Pipelining Prod., Inc.*,
  No. CIV. A. 98-164(SLR), 1999 WL 1011974 (D. Del. Oct. 22,
  1999) ................................................................................................................23

*Silvergate Pharm. Inc. v. Bionpharma Inc.*,
  No. CV 16-876, 2018 WL 1610513 (D. Del. Apr. 3, 2018)..............................41

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
  537 F.3d 1357 (Fed. Cir. 2008) ................................................................... 51-52

*Sun Pharm. Indus. Ltd. v. Saptalis Pharm.*,
  LLC, No. CV 18-648-WCB, 2019 WL 2549267 (D. Del. June 19,
  2019) ................................................................................................................43

*Synthes (USA) v. Smith & Nephew, Inc.*,
  547 F. Supp. 2d 436 (E.D. Pa. 2008)................................................................52

*Teva Pharma. USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015) ........................................................................50

*Thorner v. Sony Computer Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ........................................................................25

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997) ...................................................................4, 19

*U.S. v. Goldberg*,
  67 F.3d 1092 (3d Cir. 1995) .............................................................................12

*UCB, Inc. v. KV Pharm. Co.*,
  No. CIV A 08-223-JJF, 2009 WL 2524519 (D. Del. Aug. 18,
  2009) ................................................................................................................42

*UCB, Inc. v. Mallinckrodt Inc.*,
  No. 12-463-LPS, 2013 WL 3871427 (D. Del. July 25, 2013) ..........................41

*Ultimate Combustion Co. v. Fuecotech, Inc.*,
  No. 12-60545-CV, 2013 WL 12091158 (S.D. Fla. Nov. 4, 2013).....................11

*Ultratec, Inc. v. Sorenson Communs., Inc.*,
    No. 14-cv-66-jdp, 2015 U.S. Dist. LEXIS 121144 (W.D. Wis. Sep.
    11, 2015) ..................................................................................................11

**STATUTES**

**Page(s)**

35 U.S.C. § 112(2) ...................................................................................................46

## INTRODUCTION

### 1.  CAP-XX's Opening Position

Plaintiff CAP-XX, Ltd. ("CAP-XX") filed suit against Defendant Ioxus, Inc. ("Ioxus") on June 5, 2018 asserting infringement of U.S. Patent No. 6,920,034 ("the '034 patent") (D.I. 44-1, Exh. A) and U.S. Patent No. 7,382,600 ("the '600 patent") (D.I. 44-1, Exh. B) (collectively, the "patents-in-suit").

CAP-XX asserts that Ioxus has infringed and continues to infringe several claims in each of the patents-in-suit, each of which recites an electrical charge storage device.  CAP-XX is an Australian company that makes charge storage devices, namely, supercapacitors, that are sold in the U.S. and elsewhere in competition with Ioxus.   The earliest application filing date for the patents-in-suit is December 5, 1998.  Prior to that time, the named inventors on the patents-in-suit discovered several improvements on supercapacitors that enhanced their capabilities for applications requiring high pulse power.  Hence, while capacitors were generally known in late 1998, the improvements set forth in the patents-in-suit produced demonstrably better characteristics, as explained further below, for such capacitors in high pulse power applications, like starting an engine or powering the flash for a camera on a mobile phone.

The disputed claim terms addressed below include technical terms, like figure of merit ("FOM"), power maximum ("Pmax"), and maximum operating

voltage.  In each instance, CAP-XX proposed a construction based on the intrinsic evidence, and Ioxus failed to propose any alternative construction, other than arguing that the claim terms are indefinite.   *See* D.I. 44, Claim Chart, pp. 1-8.  For those terms, the Court may adopt CAP-XX proposed construction, as Ioxus failed to propose any alternative construction.  Ioxus also argues that numerous other claim terms are indefinite, to the extent they include the word "about".  *Id.* at 8-14.  CAP-XX urges that the word "about" does not require a construction, as it is not a technical term or term of art and its plain and ordinary meaning may be applied by the trier of fact.  Alternatively, CAP-XX urges that the term "about" be construed to mean "approximately."  *Id.* at 13-14.  Again, Ioxus proposed no construction for "about," other than baldly asserting that it, and other claim phases containing "about", such as, "greater than about" and "lesser than about," are indefinite.  *Id.* at 9-14.  The word "about" is commonly used in patent claims, and it is routinely construed by this Court and the Federal Circuit to mean "approximately." Hence, the Court may avert a claim construction hearing altogether in this case by: (i) granting CAP-XX's motion to adopt its proposed constructions (D.I. 45), as Ioxus failed to timely propose any alternative constructions for the claim terms in dispute, and (ii) deferring ruling on Ioxus's invalidity challenge, as that issue should be addressed in accord with the expert witness and dispositive motion

schedule agreed to by the parties in the Amended Scheduling Order, Sections 11 and 12 (D.I. 32).

### 2. Ioxus's Answering Position

At its core, claim construction is a process intended to aid the trier of fact in understanding the specific lexicography of the patents-in-suit. In normal circumstances, this process takes complex, technical terms and concepts and replaces them with words and phrasing a layman might use and understand. Ultimately, the purpose of claim construction is to elucidate, not obfuscate. CAP-XX's proposed constructions achieve the exact opposite: turning shorthand technical terms into a quagmire of measurements, formulae, and variables that would leave a layman hopelessly confused.

With the exception of indefiniteness—which Ioxus understands the Court prefers to address outside the *Markman* process—the parties do not dispute very much about what the terms mean. The parties' central dispute comes down to whether or not the Court should bog the jury down in technical minutiae or let the patents speak for themselves. To be clear, Ioxus contends that each of the disputed terms is indefinite either (i) because the method of measuring certain variables is undefined and amenable to differing interpretations or (ii) because the patents-in-suit fail to provide meaningful guidance for terms of degree. To the extent the Court disagrees, Ioxus believes the plain and ordinary meaning of the terms would

be evident to a person of ordinary skill in the art and no construction is necessary. CAP-XX, on the other hand, proffers unnecessarily lengthy and complex constructions which do nothing to aid the jury's understanding of these terms.

### 3.  CAP-XX's Reply Position

In its Answering Brief, Ioxus concedes three key things: first, that CAP-XX's proposed constructions are accurate. Second, that Ioxus has not offered any alternative constructions and has waived the right to do so now.  Third, that Ioxus's indefiniteness arguments are not ripe and should be deferred until after claim construction.  In light of these three admissions, CAP-XX respectfully requests the Court adopt CAP-XX's proposed constructions and avert the need for a claim construction hearing.

### 4.  Ioxus's Sur-Reply Position

"Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims. . . It is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

CAP-XX ignores these basic precepts and instead seeks to force the Court to construe terms that do not require construction. These terms do not require construction because there is no dispute as to the *meaning* ascribed by the inventors: the disputed terms may be determined using formulae found in the work

of non-inventor Dr. John Miller. To a person of ordinary skill in the art, Dr. Miller's work provides the blueprints for determining a "figure of merit," but only if given certain variables. Dr. Miller's work does not, however, define or restrict how one of ordinary skill in the art would calculate the *variables* needed in the calculations. Instead, Dr. Miller explicitly acknowledged that the temperature at which measurements are taken directly impacts the resulting calculation. (*See* Miller at 9, Table II.) As shown in Dr. Miller's work, different measurement temperatures lead to scenarios where the *same* capacitor infringes at one temperature and does not infringe at another. (*See* pages 49-51, *infra*.) This complete lack of certainty as to whether a given product falls inside or outside the claim scope renders the asserted claims indefinite.

Overburdening the jury with a lengthy, technical recitation of Dr. Miller's work does not clarify or explain what the inventors intended to cover by their claims. The Court need not engage in unnecessary claim construction merely because CAP-XX thinks it should.

## BACKGROUND

### 1.  CAP-XX's Opening Position

The patents-in-suit disclose an improved charge storage device—namely, a supercapacitor with lower impedance and higher power density.[1] D.I. 44-1, Exh. A, '034 patent, 1:11-20.[2]  As referenced above, the earliest filing date of the patents-in-suit is December 5, 1998.  Before that time, supercapacitors generally fell into two groups: devices for high or low power applications.  *Id.* at 1:48-51.  The named inventors on the patents-in-suit observed that supercapacitors in the high-power group typically used an aqueous electrolyte, which, according to conventional wisdom in late 1998, was better suited for high power applications; however, the voltage that could be applied across such a device was extremely limited. *Id.* at 1:53-61. Conversely, low-power supercapacitors typically employed a non-aqueous electrolyte, which provided a greater voltage window but had higher internal impedance.  D.I. 44-1, Exh. A, '034 patent, 1:51–55, 62–67.

In response, the named inventors of the patents-in-suit developed

---

[1] The term supercapacitor is not limiting, as it encompasses storage devices referred to as ultracapacitors, electrochemical capacitors, and electric double layer capacitors, among others.  D.I. 44-1, Exh. A, '034 patent, 1:11-20.  The patents-in-suit are also not limited to a particular outer-construction of such devices, as it discloses cylindrical devices and others in flat packaging, as shown in the '034 patent, Figures 1 and 5-10.

[2] The patents-in-suit have essentially the same specification, so the citations to portions of the '034 patent are also applicable to the '600 patent.  In addition, the citations to the patents-in-suit patent include the column number followed by the line number; hence, the citation "1:4-7" refers to column 1, lines 4 through 7.

supercapacitors with the desired high-power characteristics, while reducing various resistive components of such devices. *Id. at* 21:64-22:11; 30:6-66. The significance of CAP-XX's improvements to supercapacitors was contemporaneously and independently investigated and reported in a paper titled "Pulse Power Performance of Electrochemical EDLCs: Technical Status of Present Commercial Devices" written by John Miller, Ph.D., which was presented on or about December 8, 1998, after the filing date for the patents-in-suit. D.I. 44-1, Exh. C. Dr. Miller reported that he evaluated several different supercapacitors to identify the devices having superior pulse power. *Id.* at p. 4. Five CAP-XX supercapacitors were included in the study. *Id.* at 5. Dr. Miller observed "major differences" among the devices, noting that those offering the best pulse power performance are "clearly evident." *Id.* at p. 11. As shown in Table 1 of Dr. Miller's paper, CAP-XX's devices achieved the highest gravimetric and volumetric pulse power values. *Id.* at p. 9.

For high power pulse applications, Dr. Miller recognized the importance of determining certain physical characteristics of a supercapacitor at a specific frequency.[3] In that regard, the figure of merit or FOM reported by Dr. Miller

---

[3] CAP-XX submits, as Exhibit A hereto, a tutorial explaining various technical terms, like figure of merit, as described in the specification of the patents-in-suit and recited in some instances in the asserted claims. With regard to figure of merit, the tutorial also explains how it is determined by evaluating the performance characteristics and response time of a supercapacitor at a certain frequency, and the

represents a measure of the power density (i.e., volumetric or gravimetric power density) that a supercapacitor can deliver to a circuit at the frequency where its impedance reaches a -45 degree phase angle.  D.I. 44-1, Exh. A, '034 patent, 16:42-62.  In that manner, FOM provides an empirical value for the power density, i.e., a physical characteristic of a supercapacitor operating at a certain frequency, which allows for a more accurate comparison of the pulse power characteristics of such devices.

The asserted patent claims include details regarding the physical characteristics of charge storage devices, including claim limitations related to the power density of a charge storage device.  For some claims, the power density of the device is represented by its figure of merit or FOM, and in other claims, it is represented by its power maximum or Pmax.  Claims 13 and 34 of the '034 patent, shown below, are examples of asserted claims with the disputed terms shown in italics:

Claim 13. A charge storage device including:

a charge storage cell including:

(a) a first electrode having a first layer including a carbon having a surface area greater than 400 m$^2$/gram;

(b) a second electrode having a second layer including a carbon

---

significance of figure of merit when comparing the relative power characteristics of charge storage devices, like supercapacitors.

having a surface area greater than 400 m$^2$/gram; and

(c) a porous separator disposed between the electrodes;

a sealed package for containing the cell and an organic electrolyte in

which the cell is immersed, wherein the first and second layers

are opposed and spaced apart; and

at least two terminals that extend from the package to allow

external electrical connection to the cell, wherein the

*volumetric FOM (Figure of Merit)* of the device is

*greater than about 1.1 Watts/cm$^3$* and the *maximum*

*operating voltage* of the cell is *less than about 4 Volts.*

Claim 34. A charge storage device including:

a charge storage cell having:

(a) a first electrode;

(b) a second electrode being opposed to and spaced apart from

the first electrode; and

(c) a porous separator disposed between the electrodes;

a sealed package for containing the cell and an electrolyte in which

the cell is immersed; and

at least two terminals that extend from the package to allow external

electrical connection to the cell, wherein the *volumetric power*

9

> *maximum* of the device is *greater than about 35 Watts/cm³* and
>
> the *maximum operating voltage* of the cell is *less than about 4*
>
> *Volts*.

D.I. 44-1, Exh. A, '034 patent, 31:63-32:14; 33:1-14 (emphasis added).

# I.    AGREED-UPON CONSTRUCTIONS

## A.    CAP-XX's Opening Position

As shown in the Joint Claim Construction Chart (D.I. 44), the parties have

not expressly agreed to the construction of any disputed terms.

## B.    Ioxus's Answering Position

As CAP-XX's Opening Brief concedes, "the parties have not expressly

agreed to the construction of any disputed terms." (*See* Section A, directly above.)[4]

# II.   WAIVER

## A.    CAP-XX's Opening Position

As shown in the Joint Claim Construction Chart (D.I. 44), the parties have

not expressly agreed to the construction of any disputed terms.  CAP-XX proposed

---

[4] Despite acknowledging that there are no agreed-upon constructions, CAP-XX
spends three pages attempting to argue that Ioxus failed to provide constructions
and, as such, the Court must adopt CAP-XX's proposals. (Section II.A., p. 10,
*infra*.) This is simply not the case. *See Bancorp Servs., L.L.C. v. Sun Life Assur.
Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012) ("Just as a district
court may construe the claims in a way that neither party advocates, we may depart
from the district court and adopt a new construction on appeal.") (internal citations
omitted). The Court should reject CAP-XX's attempt to force its unhelpful
constructions on the Court and the jury.

constructions for several terms.  Ioxus did not propose any alternative

constructions.  Instead, Ioxus broadly claimed that the claims terms are indefinite.

*See generally,* D.I. 44-1, Joint Claim Construction Chart.  Under such

circumstances,  Ioxus has waived the right to propose alternative constructions.

*See Leader Techs., Inc. v. Facebook, Inc*., 770 F. Supp. 2d 686, 700 (D. Del.

2011), *aff'd*, 678 F.3d 1300 (Fed. Cir. 2012) (rejecting Facebook's attempt to limit

the Court's construction "to include limitations that were not proposed by

Facebook during claim construction."); *Info. Tech. Innovation, LLC v. Motorola,

Inc.*, 391 F. Supp. 2d 719, 724 (N.D. Ill. 2005) (holding that, where defendants

contended terms were indefinite and did not propose alternative constructions,

"Defendants have waived their right to present alternative constructions of the

terms."); *see also Ultratec, Inc. v. Sorenson Communs., Inc.*, No. 14-cv-66-jdp,

2015 U.S. Dist. LEXIS 121144, at *21 n.2 (W.D. Wis. Sep. 11, 2015)

("Defendants did not timely raise this issue in their claim construction contentions,

and thus the issue is waived."); *Ultimate Combustion Co. v. Fuecotech, Inc.*, No.

12-60545-CV, 2013 WL 12091158, at *3 (S.D. Fla. Nov. 4, 2013) (where

defendants failed to adhere to appropriate claim construction deadlines, they

"waived any arguments as to the appropriate construction" of claims); *Allergan

Inc. v. Cayman Chem. Co.*, No. SACV0701316JVSRNBX, 2010 WL 11470342, at

*4 (C.D. Cal. Jan. 12, 2010) ("Defendants did not advance this construction in the

Joint Statement and did not notify Plaintiffs of the new construction. This is reason enough to reject this extra language.").  The Court may adopt CAP-XX's proposed constructions for the disputed claim terms, and conserve the expense and judicial resources required for a claim construction hearing

"A waiver is an intentional and voluntary relinquishment of a known right. *U.S.  v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995). As with any legal right, a party can waive its right to assert a particular claim construction for a term. *See*, *e.g.*, *Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (affirming district court's finding of waiver when party failed to raise claim construction issue "during the claim construction phase"); *Constant Compliance, Inc. v. Emerson Process Mgmt. Power & Water Solutions, Inc.*, 598 F. Supp. 2d 842 (N.D. Ill. 2009) (finding defendant waived its ability to propose constructions by failing to comply with court order requiring simultaneous exchange of claim terms and adopting plaintiff's proposed constructions).

The Northern District of Illinois' decision in *Constant Compliance* is particularly instructive.  There, the court order required that the parties simultaneously exchange proposed terms and constructions. 598 F. Supp. 2d at 843-44.  Like Ioxus, the defendant did not propose constructions and instead only argued certain terms were indefinite. *Id.* The defendant subsequently provided

proposed constructions two weeks after the exchange deadline. *Id.* at 844. In holding that the defendant had waived its right to propose constructions for terms it knew were disputed, the court explained that its order required the simultaneous exchange of claim terms "expressly to avoid prejudice to either party" and that, to allow the defendant to propose constructions later "would eviscerate the purpose of the order by disadvantaging Plaintiff and advancing [defendant]." 598 F. Supp. 2d at 845.[5]  Recognizing that courts have no obligation to undertake the parties' duty to propose constructions (which the defendant had waived), the court then adopted the plaintiff's unchallenged proposed constructions.  *Id.* at 848.

As in *Constant Compliance*, this Court should find that Ioxus waived its ability to belatedly propose constructions by failing to meet this Court's deadlines for simultaneous exchange of terms and constructions. In light of that waiver, CAP-XX's proposed constructions should be adopted for the purposes of this case. *See Constant Compliance*, 598 F. Supp. 2d at 848; *Info. Tech. Innovation, LLC*, 391 F. Supp. 2d at 724 ("The Court adopts ITI's unchallenged proposed

---

[5] Similarly, in *Industry Access Inc. v. Core-logic, Inc.*, Case No. SACV 11-473-JLS (FFMx), 2014 WL 12775082, at *7 (C.D. Cal. July 8, 2014), the court refused to consider a different construction than what the party had previously proposed earlier in the joint claim construction statement, explaining that "[a]lthough both constructions are substantively similar, this approach to claim construction deprives an opposing party of the opportunity to brief fully a party's construction. It also contravenes the exhaustive claim construction procedures set forth by the Court."

constructions, without prejudice to defendants' later argument concerning indefiniteness.").

### B.    Ioxus's Answering Position

No corresponding section.[6]

### C.    CAP-XX's Reply Position

Ioxus does not attempt to rebut—or even address—CAP-XX's argument that Ioxus has waived the right to propose alternative constructions.  Ioxus merely states, inaccurately and in a footnote, that CAP-XX claims the Court "must adopt CAP-XX's proposals," and that the Court has discretion to reach its own constructions. Page 10, n.4, *supra* (emphasis added).  Notwithstanding the fact that CAP-XX argued that the Court may (not "must") accept CAP-XX's proposed constructions due to Ioxus's failure to timely propose alternative constructions, this passing footnote addresses only the Court's ability to construe new positions not suggested by the parties—not Ioxus's ability to raise new positions after the Court's claim construction deadlines.  Ioxus has therefore made a tactical decision not to respond to CAP-XX's waiver argument, and has forfeited any opposition thereto.

---

[6] As explained below in Section II.D, CAP-XX's waiver argument does not identify any new or alternative constructions that Ioxus is allegedly proposing and, as such, is irrelevant and does not merit a response.

"[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 (3d Cir. 1997).  Because Ioxus has not submitted any briefing to oppose CAP-XX's waiver argument, Ioxus has conceded its waiver.  *See Grossbaum v. Genesis Genetics Inst., LLC*, 489 F. App'x 613, 617 (3d Cir. 2012) (holding that a party's "tactical choice not to respond to Genesis's argument" was "unwise" and constituted waiver); *Idenix Pharm. LLC v. Gilead Scis., Inc.*, 271 F. Supp. 3d 694, 698 (D. Del. 2017) (holding that a "cursory reference in a footnote in its brief … is inadequate to put the issue before the Court"); *Robocast, Inc. v. Apple Inc.*, No. CV 11-235-RGA, 2014 WL 2622233, at *1 (D. Del. June 11, 2014) ("arguments raised in footnotes are not preserved.") (citation omitted).

Ioxus does not actually dispute the majority of CAP-XX's proposed constructions; it simply does not want the Court to restrict Ioxus's ability to shift positions regarding its noninfringement and invalidity contentions. Ioxus acknowledges that, but for its premature indefiniteness positions, "the parties do not dispute very much about what the terms mean."  Page 3, *supra*.  Ioxus admits that CAP-XX's proposed constructions for "volumetric figure of merit," "gravimetric figure or merit," "figure of merit,"  "gravimetric power maximum," "volumetric power maximum," "maximum operating voltage" accurately define those terms.  Because Ioxus has failed to propose any alternative constructions

(and has waived the right to do so), there is no genuine dispute as to the construction of these terms.

### D.   Ioxus's Sur-Reply Position

CAP-XX repeatedly asserts that Ioxus waived its rights to propose new constructions at this point in time. (*See* Pages 10-14, 14-15, 21, 25, 29.) Yet CAP-XX does not identify any "new" or "alternative" constructions that Ioxus is allegedly proposing. Nor does CAP-XX identify how it has been allegedly wronged or harmed by Ioxus's non-existent alternative constructions. In short, CAP-XX's waiver argument is wholly irrelevant and unnecessary and, as such, should be ignored.

## III.   DISPUTED CONSTRUCTIONS

### A.   "volumetric figure of merit" / "gravimetric figure of merit" / "figure of merit"

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| gravimetric figure of merit | The gravimetric figure of merit for a storage device is determined by identifying the frequency $f_0$ at which the impedance of that device reaches a $-45°$ phase angle. The reciprocal of $f_0$ then provides a characteristic response time $T_0$ for the storage device. The value of the imaginary part of the impedance $Z''$ at $f_0$ is used to calculate the energy $E_0$ as follows: $E_0 = \frac{1}{2}CV^2$, where $C = -1/(2\pi f_0 Z'')$ and V is the rated voltage of the device.  The gravimetric figure of merit is then calculated as follows: gravimetric FOM = $E_0/(mT_0)$, where m is the | Indefinite |

| | mass of the storage device. | |
|---|---|---|
| volumetric figure of merit | Same as above, except volumetric FOM = $E_0/(vT_0)$, where v is the volume of the storage device. | Indefinite |

### 1.   CAP-XX's Opening Position

The claim terms "gravimetric figure of merit" and "volumetric figure of merit" are technical terms for characterizing the power density of a charge storage device at a certain frequency, as discussed above.  CAP-XX's proposed construction is based on, and essentially the same as, the specification of the patents-in-suit, which explains how to determine the gravimetric and volumetric FOM of a charge storage device.  *See* D.I. 44-1, Exh. A, '034 patent, 16:43-17:7. It is also consistent with the description for calculating gravimetric and volumetric figure of merit set forth in the above-discussed article by Dr. Miller, which is incorporated by reference into the specification of the patents in suit.  *See,* D.I. 44-1, Exh. C, Dr. Miller Article, pp. 4-4; D.I. 44-1, Exh. A, '034 patent, 16:63-17:3.

Ioxus did not propose an alternative construction for this term, and it has not disputed any particular aspect of CAP-XX's proposed construction; rather, it baldly argues that the terms "gravimetric figure of merit" and "volumetric figure of merit" are indefinite.  D.I. 44-1, Joint Claim Construction Chart, pp. 1-3.

Given the support for CAP-XX's proposed construction in the specification of the patents-in-suit and Dr. Miller's article incorporated therein, and the absence

of any counterproposal by Ioxus, CAP-XX urges that this Court adopt its proposed constructions for the above terms.

## 2. Ioxus's Answering Position

It is undisputed that Dr. John Miller—and not the inventors of the patents-in-suit—coined the phrase "figure of merit" as a new means of measuring the pulse power performance capabilities of EDLCs. (D.I. 44-1, Joint Claim Construction Chart, Ex. C, ("Miller") at Abstract, 4-5.) Prior to Dr. Miller's invention, this phrase held no meaning within the EDLC community—engineers looking to compare power performance relied on other methods of measurement. (*See id.* at 4.) In response to the shortcomings of these measurements, Dr. Miller developed and defined his "figure of merit" formula. (*See id.* at 4-5.)

As explained in Ioxus's Motion for Judgment on the Pleadings, the patents-in-suit traded off of Dr. Miller's hard work and merely claim EDLCs within certain figure of merit ranges. (*See* D.I. 34 at 1-2, 3-5, 9-13.) Indeed, the patents-in-suit—after providing the formula for calculating figure of merit—acknowledge that it was Dr. Miller, not CAP-XX, who invented the new form of measurement. ('034 patent at 16:44-17:7.) The patents-in-suit go so far as to incorporate Dr. Miller's work by reference. ('034 patent at 17:1-3.) As such, Dr. Miller's article is considered part of the intrinsic record. *See, e.g., Cook Biotech Inc. v. ACell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006) (citing *Adv. Display Sys., Inc. v. Kent State*

*Univ.,* 212 F.3d 1272, 1282 (Fed. Cir. 2000)). And one of ordinary skill in the art would know to look to Dr. Miller's article to understand the meaning of the term "figure of merit" and the formulas necessary to calculate it. *Id.* at 1375-1378 (analyzing disclosures of incorporated reference for purposes of claim construction).[7]

Claim construction "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Proper claim constructions assist the jury in understanding technical terms and do not further complicate the process by introducing unnecessary complexity. *See e.g., Control Resources, Inc. v. Delta Elecs., Inc.*, 133 F.Supp.2d 121, 127 (D. Mass. 2001) ("In the end, claim construction must result in a phraseology that can be taught to a jury of lay people. . . The claims must be translated into plain English so that a jury will understand."); *Apple Inc. v. Motorola, Inc.*, No. 1:11-cv-08540, 2012 WL 8123793 (N.D. Ill. Mar. 12, 2012) (Posner, J. by designation) (ordering claim constructions in "ordinary English intelligible to persons having no scientific or technical background."). CAP-XX's proposal ignores these basic precepts of claim

---

[7] The fact that Dr. Miller provided a formula explaining how certain variables can be used to calculate a figure of merit does not save this term from indefiniteness. As discussed in Section IV.2, below, the variables used by Dr. Miller's formula can vary depending on how they are measured. Because neither Dr. Miller nor CAP-XX's proposed construction sheds any light on how these measurements are to be taken, the claim terms are indefinite.

construction and turns a four-word phrase into a 110-word screed to express essentially the same concept.

Ioxus does not argue that CAP-XX's construction is an inaccurate summary of Dr. Miller's work. The construction is, however, neither necessary nor helpful. One of ordinary skill in the art would understand that a storage device's figure of merit could be calculated, if in possession of all relevant variables, using the formulas disclosed in Dr. Miller's article. Merely rephrasing these calculations in a way that no lay person would be able to decipher does not serve the purpose of claim construction.

Because one of ordinary skill in the art—taking into account the disclosures of the patents-in-suit—would know that "figure of merit" could be calculated using Dr. Miller's formulas, merely restating those formulas in the proposed construction amounts to nothing more than an obligatory exercise in redundancy. The Court should reject CAP-XX's confusing construction and instead find that no construction is necessary for these terms.

### 3.    CAP-XX's Reply Position

As stated in its Opening Brief, CAP-XX's proposed construction for "gravimetric figure of merit" and "volumetric figure of merit" is supported by the specification of the patents-in-suit and Dr. Miller's article, which was incorporated by reference into the specification.  Page 17, *supra*.  Ioxus concedes that CAP-

XX's proposed construction is accurate.  *See* page 20, *supra* ("Ioxus does not argue that CAP-XX's construction is an inaccurate summary of Dr. Miller's work.").

Ioxus does not propose an alternative construction, but argues that no construction is necessary because "one of ordinary skill in the art would know to look to Dr. Miller's article to understand the meaning of the term 'figure of merit' and the formulas necessary to calculate it."[8] Pages 18-19, *supra*.  As noted in CAP-XX's Opening Brief, Ioxus did not propose any construction for these claim terms, including that no construction was needed and that a plain and ordinary meaning should apply.  Ioxus exclusively argued that these claim terms were indefinite and could not be construed.  *See* Joint Claim Construction Chart, D.I. 44.  Ioxus has therefore waived the right to raise untimely positions in its Answering Brief.

### a.   Ioxus Attempts to Delegate Claim Construction to the Jury.

Notwithstanding its waiver, Ioxus's position runs afoul of fundamental claim construction principles.  The crux of Ioxus's argument is that construing technical terms would be too confusing for the jury and that the Court should not "bog the

---

[8] Ioxus's argument that the patents-in-suit are indefinite because they "fail to adequately specify the means for measuring certain of these variables," page 50, *infra*, is belied by its argument that no construction is needed because ordinary artisans would know to look to Dr. Miller's article "to understand the meaning of the term 'figure of merit' and the formulas necessary to calculate it." Pages 18-19, *supra*.  Persons of ordinary skill in the art reading the patents-in-suit would understand that the FOM determinations for the devices recited in the asserted patent claims are to be conducted at ambient temperature—just like all seventeen devices tested in Dr. Miller's article.

jury down in technical minutiae" and "let the patents speak for themselves."  Page

3, *supra*.  In so doing, Ioxus improperly delegates the task of claim construction to

the jury.

Claim construction is a matter of law "exclusively within the province of the

court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

Although Ioxus argues that claim construction must "take[] complex, technical

terms and concepts and replace[] them with words and phrasing a layman might

use and understand" (page 3, *supra.*), this glosses over the primary purpose of

claim construction—to "determin[e] the meaning and scope of the patent claims

asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967,

976 (Fed. Cir. 1995) (en banc).  While a claim construction order will dictate how

the court will instruct the jury regarding a claim's scope, *see O2 Micro Int'l Ltd. v.*

*Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008), the

ordinary meaning of a claim term is not "the meaning of the term in the abstract."

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc).  Nor is it

the meaning to a reasonable juror.  Instead, "the 'ordinary meaning' of a claim

term is its meaning to the <u>ordinary artisan</u> after reading the entire patent"—*i.e.*,

"the meaning that the term would have to a person of ordinary skill in the art in

question at the time of the invention[.]" *Id.* at 1312-13, 1321 (citations and internal

quotation marks omitted).

22

The Federal Circuit recognizes that terms used in technical, complex patents may not always lend itself to layperson construction. *See id.* at 1314 (acknowledging that, "*[i]n some cases*, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges") (emphasis added).  But that does not mean such terms cannot be construed.  Courts frequently construe complex terms in chemical and pharmaceutical patents that cannot be easily translated into plain English.[9]

Ioxus's position—construe nothing—is tantamount to asking the Court to abandon its duty to determine the scope of the asserted claims and leave it to the jury.  But when the parties raise an actual dispute regarding the proper scope of the claims, the court, not the jury, must resolve that dispute. *O2 Micro Int'l Ltd.*, 521

---

[9] *See e.g. Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 288 F. Supp. 2d 601 (D. Del. 2003) (construing "about 70/35 mg" to mean "the equivalent of 70/35 mg of alendronic acid when taking into account molecular weight variances for its derivatives that carry accessories."); *Pipe Liners, Inc. v. Pipelining Prod., Inc.*, No. CIV. A. 98-164(SLR), 1999 WL 1011974, at *9 (D. Del. Oct. 22, 1999), *judgment entered*, No. CIV.A. 98-164(SLR), 1999 WL 34984249 (D. Del. Nov. 15, 1999) (construing "shape memory activation temperature" to mean "the crystallization point of a given thermoplastic, calculated according to the following formula: $Tc \simeq (Tm + Tg)/2$ where Tc is the crystallization temperature, Tm is the melting temperature and Tg is the glass transition temperature."); *Dade Behring Marburg GmbH v. Biosite Diagnostics, Inc.*, No. CIV. A. 97-501 MMS, 1998 WL 552962, at *9 (D. Del. July 24, 1998) (construing "immunosorbing zone comprising mip non-diffusively bound to at least a portion of a bibulous support serving as an inlet port for liquids into said device" as "covering an immunoassay method where the test solution must enter the immunosorbing zone before proceeding to the liquid absorbing zone, but not all of the solution must necessarily come into contact with mips while in the immunosorbing zone.").

F.3d at 1360.  "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *Id.* at 1361.  To do as Ioxus suggests here would be clear legal error.  *See Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) ("By determining only that the terms should be given their plain and ordinary meaning, the court left this question of claim scope unanswered, leaving it for the jury to decide. This was legal error.").

Claim construction at this point in the case is designed specifically to "require parties to crystallize their theories of the case early in the litigation" so as to "prevent the 'shifting sands' approach to claim construction." *See O2 Micro Int'l Ltd.*, 467 F.3d at 1364.  Allowing the terms to remain open to interpretation, as Ioxus asks the Court to do by refusing to construe anything, allows Ioxus to shift to new meanings or positions to avoid summary judgment on its noninfringement or invalidity contentions.  CAP-XX respectfully submits that construction of the disputed terms is necessary so that the parties can complete discovery and adhere to their theories based on this Court's construction of the disputed claims, which should provide more clarity when the parties file their respective motions for summary judgment at the close of discovery.

**b.    CAP-XX's Constructions Are Supported By the Specification.**

Ioxus's assertion that no construction is needed should be rejected, not simply because Ioxus waived the right to propose an alternative construction but also because the claim term "figure of merit" was <u>not</u> known in the art prior to December 6, 1998, so there was no plain and ordinary meaning for that term at that time.  That term became known later through the publication of the Miller article discussed above, a version of which was incorporated into the specification of the '034 Patent.  '034 Pat., 16:62-17:3.

Accordingly, the Court may adopt CAP-XX's proposed constructions, which Ioxus concedes are accurate and supported by the specification.   Ioxus ignores that claim construction can depart from "plain and ordinary meaning" when a patentee sets out a definition and acts as his own lexicographer. *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Thorner*, 669 F.3d at 1365-66 (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). By defining "gravimetric figure of merit" and "volumetric figure of merit" in the specification, CAP-XX "'clearly express[ed] an intent' to redefine the term."

*Id.* at 1366 (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008)).

Here, "Figure of Merit" was not a term of art known with respect to supercapacitors prior to the effective filing date for the '034 Patent.  The '034 Patent explains how to determine the Figure of Merit of a device. CAP-XX's written description of the invention is therefore relevant and controlling insofar as it provides clear lexicography for these terms. *Id.*

### 4.    Ioxus's Sur-Reply Position

CAP-XX's reply brief again asserts that the Court "must" construe these terms and that anything short of adopting CAP-XX's positions would be "tantamount to asking the Court to abandon its duty…and leave it to the jury." (Page 23, *supra*.) This is simply not the law.

It is absolutely within the Court's power to decline to construe a claim term where there is no actual dispute about a term's meaning. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (recognizing that "district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims" but only "[w]hen the parties present a fundamental dispute regarding the scope of a claim term"). The fundamental dispute that the parties have in this case is whether or not these "figure of merit" terms are indefinite. Both parties agree that Dr. Miller—and not

26

the inventors—invented "figure of merit" and defined the formula necessary to calculate a "figure of merit" in his article on the topic. (*See* pages 28-29, *infra* (citing Miller).) But because Dr. Miller left open the question of how to determine certain key variables necessary to that calculation, the parties dispute indefiniteness. Because the Court does not wish to hear indefiniteness arguments at this stage, there is no present dispute about the construction for the Court to resolve.[10]

Contrary to CAP-XX's insinuations, Ioxus is not "asking the Court to abandon its duty" or attempting to "shift to new meanings or positions to avoid summary judgment." (Page 24, *supra*.) Rather, Ioxus is seeking to prevent the Court from engaging in an unnecessary "obligatory exercise in redundancy" by restating the whole of Dr. Miller's work in the language of the claims. *See U.S. Surgical*, 103 F.3d at 1568 ("The *Markman* decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court.")

---

[10] Ioxus will seek leave to file early summary judgment as appropriate, pursuant to the Court's Scheduling Order. (D.I. 30.)

B.     **"gravimetric power maximum" / "volumetric power maximum"**

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| gravimetric power maximum | Maximum power or Pmax for a storage device is calculated with the formula: P max = $V^2$/4R, where V is the maximum operating voltage of the capacitor and R is the resistance determined from the simple RC model of the storage device.<br><br>The gravimetric power maximum is then determined by dividing Pmax by the mass of the storage device. | Indefinite |
| volumetric power maximum | Same as above to determine Pmax, then the volumetric power maximum is determined by dividing Pmax by the volume of the storage device. | Indefinite |

### 1.     CAP-XX's Opening Position

The claim terms "gravimetric power maximum" and "volumetric power maximum" are technical terms for characterizing the power density of a charge storage device. CAP-XX's proposed construction is based on, and essentially the same as, the specification of the patents-in-suit, which explains how to determine the gravimetric and volumetric power maximum of a charge storage device. *See* D.I. 44-1, Exh. A, '034 patent, 22:46-54; 26:20-36.

Ioxus did not propose an alternative construction for this term, and it has not disputed any particular aspect of CAP-XX's proposed construction; rather, it

baldly argues that these terms are indefinite.  *See* D.I. 44-1, Joint Claim

Construction Chart, pp. 6-7.

Given the support for CAP-XX's proposed construction in the specification

of the patents-in-suit, and the absence of any counterproposal by Ioxus, CAP-XX

urges that this Court adopt its proposed constructions for the above terms.

### 2.      Ioxus's Answering Position

As they did with the "figure of merit" terms, CAP-XX proffers an

unnecessarily long and complex construction for gravimetric and volumetric power

maximum. (Page 28, *supra*.)

Again, Ioxus does not contend that the recitation of the formulas underlying

these terms is inaccurate, merely that it is unnecessary—because one of ordinary

skill in the art understands the meaning of the term and that it could be

calculated—and unhelpful—because it is more likely than not to confuse the jury

with unnecessary verbiage and calculations.

As such, Ioxus proposes that, to the extent the Court deems this term is not

indefinite, no construction is necessary.

### 3.      CAP-XX's Reply Position

CAP-XX incorporates herein its discussion above that Ioxus has waived the

right to propose alternative constructions (including that no construction is

needed), and that Ioxus's position improperly urges the Court to punt construction

of complex, technical terms to the jury.  Again, Ioxus concedes that CAP-XX's proposed construction is accurate and does not propose an alternative construction. *See* page 20, *supra* ("Ioxus does not argue that CAP-XX's construction is an inaccurate summary of Dr. Miller's work.").  Ioxus does not dispute that CAP-XX's proposed construction is supported by the intrinsic record.  *See generally id.* There is therefore no reason not to adopt CAP-XX's proposed construction.

### 4.  Ioxus's Sur-Reply Position

For substantially the same reasons as discussed regarding "figure of merit," and to the extent the Court does not find this term indefinite, Ioxus does not believe a construction of this term is necessary. (*See supra*, Section III.A.)

### C.  "Maximum Operating Voltage"

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| "maximum operating voltage" | No construction necessary as plain and ordinary meaning applies.<br><br>Alternatively, the voltage at which the storage device is designed to operate under normal conditions. | Indefinite |

### 1.  CAP-XX's Opening Position

The term "maximum operating voltage" is a commonly employed term of art in the field of charge storage devices, and typically refers to the "rated voltage" of

such devices.  Hence, its plain and ordinary meaning should be applied, and no

construction is required.  By way of example, a technical dictionary for electronics,

published in 1999, provides the following definitions for "rated voltage":

> **rated voltage –** 1. The voltage at which a device or
>
> component is designed to operate under normal conditions.
>
> 2. The maximum voltage at which an electric component
>
> can operate for extended periods without undue degradation
>
> or safety hazard.

*See,* Exhibit B hereto, Rudolf F. Graf, The Modern Dictionary of Electronics,

Seventh Edition (1999).

Similarly, the patents-in-suit provide:

> In a supercapacitor with symmetrical carbon based
>
> electrodes, the voltage is equally distributed across both
>
> electrodes.  During operation, the maximum capacitor
>
> voltage is limited by the breakdown voltage of the
>
> weakest electrode. A higher operating voltage can be
>
> achieved by tailoring the capacitance of each electrode to
>
> fully utilise the available voltage window. This is
>
> conveniently achieved by using different carbon loadings
>
> on each electrode.

*See* D.I. 44-1, Exh. A, '034 patent, 22:46-54.  Consistent with the above-referenced definition, the patents-in-suit explain that the maximum operating voltage for a supercapacitor is the voltage at which the capacitor will operate without breaking down the weakest electrode.

In addition, the patents-in-suit elsewhere use the terms "maximum operating voltage" and "rated voltage," synonymously.  As referenced above, the figure of merit for a charge storage device is determined, in part, using voltage V, which refers to the rated voltage of a device.  *See* D.I. 44-1, Exh. A, '034 patent, 16:55-59.  Elsewhere in the specification, the patents-in-suit provide that Pmax is calculated with voltage V, where V is the maximum operating voltage.  *Id.* at 22:37-40; 26:20-37.  The Pmax and FOM values for several devices are reported in tables shown in Figures 17 and 20 of the '034 patent.  *See* D.I. 44-1, Exh. A, '034 patent.  Those tables include a column for the rated voltage of the devices listed therein.  *Id.*  The same rated voltage for each of those devices was used to calculate the FOM and Pmax values reported in that table.

Again, Ioxus did not propose an alternative construction for this term, and it has not disputed any particular aspect of CAP-XX's proposed construction; rather, it baldly argues that the term is indefinite.  *See* D.I. 44-1, Joint Claim Construction Chart, p. 8.

32

Given the support for CAP-XX's proposed construction in the specification of the patents-in-suit and referenced extrinsic evidence, and the absence of any counterproposal by Ioxus, CAP-XX urges that this Court adopt its proposed constructions for this term.

### 2.    Ioxus's Answering Position

CAP-XX proposes that no construction is necessary for this term and that the plain and ordinary meaning applies. (Page 30, *supra*.) To the extent that the Court determines this phrase is not indefinite, Ioxus agrees that no construction is necessary.

### 3.    CAP-XX's Reply Position

Throughout the entire claim construction process, Ioxus opposed CAP-XX's proposed constructions for each of the terms listed in the Joint Claim Construction Chart.  D.I. 44.  As a consequence, CAP-XX was obliged to spend substantial time, money and effort to address these terms in its Opening Brief.  Ioxus, by way of its answering brief and without providing any prior notice to CAP-XX, declares, for the first time, that it agrees with CAP-XX that "maximum operating voltage" requires no construction and that the plain and ordinary meaning applies.  Page 33, *supra*.  Because Ioxus concedes that indefiniteness is premature and declined to raise it at this time, *see* page 49, *infra*, there is no dispute as to the construction of this term..

### 4.    Ioxus's Sur-Reply Position

CAP-XX argues "there is no dispute" that the term "maximum operating voltage" does not require construction. (Page 33, *supra*.) Although Ioxus does not dispute that no construction is required for this term, Ioxus does dispute whether or not this term—like many of the other terms at issue—is sufficiently definite. (Pages 49-51, *infra*.) To the extent the Court does not wish to address indefiniteness at this juncture, Ioxus agrees with CAP-XX that the Court need not address or construe "maximum operating voltage.".

### D.    "greater than about 3.2 Watts/cm3" / "range of about 3.2 Watts/cm3 to 4 Watts/cm3"

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| greater than about 3.2 Watts/cm$^3$ | No construction necessary as plain and ordinary meaning applies.<br><br>Alternatively, greater than approximately 3.2 Watts/cm$^3$. | Indefinite<br>Alternatively, greater than 3 Watts/cm$^3$ |
| range of about 3.2 watts/cm$^3$ to 4 watts/cm$^3$ | No construction necessary as plain and ordinary meaning applies.<br><br>Alternatively, range of approximately 3.2 Watts/cm$^3$ to 4 Watts/cm$^3$. | Indefinite<br>Alternatively, between 3 and 4 Watts/cm$^3$ |

### 1.    CAP-XX's Opening Position

### a.    "greater than about 3.2 Watts/cm3"

CAP-XX incorporates herein its discussion below regarding the word "about," and, for the same reasons, urges this Court either find that the above claim

term does not require construction or, alternatively, that this Court adopt the construction proposed by CAP-XX substituting the word "approximately" for the word "about.". The above claim element appears in claim 1 of the '034 patent and refers to the volumetric FOM of a charge storage device. As explained in the tutorial, submitted as Exhibit A hereto, the process for determining the FOM of a device requires the operation of the device to measure its impedance at varying frequencies. The results may be represented in a plot or graph to identify the frequency where the phase angle is -45°. The claim term "about" in this context acknowledges that there is some margin of error in determining the FOM of a charge storage device.

CAP-XX objects to Ioxus's proposed construction because Ioxus offered no support, intrinsic or otherwise, for its proposed construction that reduces the claim limitation of "about 3.2 Watts/cm3" to "3 Watts/cm3." Ioxus appears to select that latter number arbitrarily, presumably to support an invalidity argument.

CAP-XX urges that this Court adopt its proposed construction, which is based on the plain meaning of the claim term "about" and is consistent with the method for determining the FOM of an accused device.

### b.     "range of about 3.2 Watts/cm3 to 4 Watts/cm3"

CAP-XX incorporates herein its discussion in the above and below two sections regarding the word "about," as used in various claim terms, including

35

those related to the volumetric FOM of a charge storage device.  For the same reasons, it urges  this Court either find that the above claim term does not require construction or, alternatively, that this Court adopt the construction proposed by CAP-XX substituting the word "approximately" for the word "about."  As in the previous section, the above claim element refers to the volumetric FOM of a charge storage device, and the use of the word "about" in this context is consistent with the method of determining the FOM of such device, as discussed above.

As in the prior section, CAP-XX objects to Ioxus's proposed construction because Ioxus offered no support, intrinsic or otherwise, for its proposed construction that reduces the claim limitation of "about 3.2 Watts/cm3" to "3 Watts/cm3".  Ioxus appears to select that latter number arbitrarily, presumably to support an invalidity argument.

CAP-XX urges that this Court adopt its proposed construction, which is based on the plain meaning of the claim term "about" and is consistent with the method for determining the FOM of an accused device.

### 2.    Ioxus's Answering Position

It is well understood that other claims, and especially related claims, may provide context that is useful in determining the true scope of a given claim. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("Other claims of the patent in question, both asserted and unasserted, can also be valuable

sources of enlightenment as to the meaning of a claim term.") (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). These phrases, which relate to a desired range for a charge device's gravimetric figure of merit, are found in independent claim 1 and dependent claim 4 of the '034 patent. ('034 patent, claims 1, 4.) The surrounding claims—claims 5, 6, 7, and 8—also discuss the gravimetric figure of merit. ('034 patent, claim 5, 6, 7, 8.) Each of these additional claims refers to gravimetric figure of merit in terms of whole numbers. (Id.) Setting aside the indefiniteness inherent in CAP-XX's use of the term "about," the most natural reading of claims 1 and 4 in the entire context of the patents-in-suit is a reading which aligns claims 1 and 4 with the remainder of the related claims.

As such, to the extent the Court deems that the use of "about" does not render these (and other) claims indefinite, the Court should construe these terms consistent with the remaining related claims to mean "greater than 3 Watts/cm3" and "range of 3 Watts/cm3 to 4 Watts/cm3."

### 3. CAP-XX's Reply Position

Ioxus arbitrarily construes the claim terms "greater than about 3.2 Watts/cm3" and "range of about 3.2 Watts/cm3 to 4 Watts/cm3" to mean "greater than 3 Watts/cm3" and "between 3 and 4 Watts/cm3," respectively.  Ioxus's Answering Brief provides no further support for its arbitrary constructions of the

numerical ranges in these claim terms other than the naked positions set forth in the Joint Claim Construction Chart. See D.I. 44 (wherein CAP-XX provided citations to the intrinsic record to support its proposed constructions and Ioxus did not).

Citing to *Phillips*, 415 F.3d at 1314, Ioxus argues that, because dependent claims 5-8 state a numerical range in whole numbers, then claims 1 and 4 must be read to recite only whole numbers as well.[11]  Ioxus's reliance on Phillips is misplaced. CAP-XX does not dispute that other patent claims can shed light on the meaning of a disputed claim term. However, Phillips referred to the use of the same term in multiple claims. *See Id.* ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.") (emphasis added). Dependent claims 5-8 contain different numerical ranges and thus are not "the same term." In arguing for "consistency," Ioxus selectively ignores those parts of the specification and other claims in the '034 Patent that express a given volumetric figure of merit in decimal form. *See e.g.* '034 Patent, 3:44, 4:24 (referring to volumetric FOM greater than about 3.2 Watts/cm3); id. 4:3 (referring to volumetric FOM greater than about 1.1 Watts/cm3); id. claim 13 (reciting a

---

[11] Ioxus states that these terms (and dependent claims 5, 6, 7, and 8) relate to the desired range for a charge device's gravimetric figure of merit. Pages 36-37, *supra*. This is incorrect. These claims pertain to the charge device's <u>volumetric</u> figure of merit. *See* '034 Pat. cls. 1, 4-8.

device having volumetric FOM greater than about 1.1 Watts/cm3).

Ioxus also fails to provide any support or rationale for the deletion of the word "about" other than its deferred indefiniteness argument.[12]   As noted by other courts,

> It would take a clear and explicit disclaimer or redefinition to justify construing the term "about," a word of approximation, to mean "precisely," a word that by definition admits of no approximation at all. The effect would be to use claim construction to define a term as meaning its own antonym, which would be an exceptional result.

*Allergan, Inc. v. Teva Pharm. USA, Inc.*, No. 2:15-CV-1455-WCB, 2016 WL 7210837, at *12 (E.D. Tex. Dec. 13, 2016) (citing *Merck & Co.*, 395 F.3d at 1370 (intrinsic evidence "fails to redefine 'about' to mean 'exactly' in clear enough terms to justify such a counterintuitive definition of 'about.'); *Glycobiosciences, Inc. v. Innocutis Holdings, LLC*, 146 F. Supp. 3d 221, 235 (D.D.C. 2015) ("[T]he entire point of using a word like 'about' is that it eschews precision; if the patentees intended to claim a precise weight range, they would have specified that precise weight range.'))

### 4.   Ioxus's Sur-Reply Position

CAP-XX agrees that "other patent claims can shed light on the meaning of a disputed claim term." (Page 38, *supra* (discussing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc)).) CAP-XX also agrees that the disputed

---

[12] Ioxus's "consistency" argument does not apply Ioxus's arbitrary deletion, as dependent claims 5-8 each contain the word "about."

terms relate to a given volumetric figure of merit in numerous asserted claims. (*Id.*, n.10.) Yet, because the "numerical ranges" describing the figure of merit are different, CAP-XX argues that they are not "the same term." (*Id.*) This argument splits too fine a hair by ignoring that the "same term" at issue here is the description of a numerical range of volumetric figure of merit (i.e. "wherein the volumetric FOM is in the range of about [X] Watts/cm3 to [Y] Watts/cm3"), not the numbers themselves. By defining the ranges by whole numbers (see, e.g., '034 Patent, claims 5-8), the inventors shed light on how the desired range of volumetric figure of merit should be defined.

To the extent the Court deems that the use of "about" does not render these claims indefinite, the Court should construe claims 1 and 4 of the '034 patent consistently with the remaining related claims to mean "greater than 3 Watts/cm3" and "range of 3 Watts/cm3 to 4 Watts/cm3."

### E.   "about"

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| about | No construction necessary as plain and ordinary meaning applies.<br><br>Alternatively, approximately. | Indefinite |

| Claim Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| greater than about | No construction necessary as plain and ordinary meaning applies.<br><br>Alternatively, greater than approximately. | Indefinite |

### 1.    CAP-XX's Opening Position

The word "about" does not require construction as it is not a technical term

of art, and it is used in its ordinary manner in the claims of the patent-in-suit.  *See*

*Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) (noting that

the term "about" "is a descriptive term commonly used in patent claims to 'avoid a

strict numerical boundary to the specified parameter.'"). This Court and the

Federal Circuit have previously construed the word "about" to mean

"approximately," which CAP-XX proposes as an alternative construction.  *See*

*Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1369 (Fed. Cir. 2005)

("We reverse the district court's construction of 'about' and hold that such term

should be given its ordinary meaning of 'approximately.'"); *Silvergate Pharm. Inc.*

*v. Bionpharma Inc.*, No. CV 16-876, 2018 WL 1610513, at *4-5 (D. Del. Apr. 3,

2018) ("Where a patentee has not acted as his own lexicographer in redefining the

word 'about,' courts have construed 'about' to mean 'approximately.' …

Accordingly, I will construe 'about' to mean 'approximately.'"); *UCB, Inc. v.*

*Mallinckrodt Inc.*, No. 12-463-LPS, 2013 WL 3871427, at *6 (D. Del. July 25, 2013) (construing "about" to mean "approximately"); *UCB, Inc. v. KV Pharm. Co.*, No. CIV A 08-223-JJF, 2009 WL 2524519, at *6 (D. Del. Aug. 18, 2009) (the most appropriate construction of 'about' is simply 'its ordinary and accepted meaning of 'approximately'.'"). Ioxus offers no construction for "about" or "greater than about"; rather, arguing that claim terms that include "about" are indefinite. *See* D.I. 44-1, Joint Claim Construction Chart, pp. 9-14. Given that CAP-XX's proposed construction is consistent with the plain and ordinary meaning of the claim terms that include the word "about" and consistent with this Court's prior ruling relating to the meaning that word, and in the absence of any counterproposal from Ioxus, CAP-XX urges that this Court adopt its constructions for the above terms, and any other disputed claim terms that include the word "about".

### 2.    Ioxus's Answering Position

*See* Section IV, below, concerning indefiniteness.

### 3.    CAP-XX's Reply Position

Ioxus does not address CAP-XX's proposed construction for the term "about" and "greater than about" other than to argue it is indefinite and to delete it from its proposed constructions of "greater than about 3.2 Watts/cm$^3$" and "range of about 3.2 Watts/cm$^3$." *See* pages 36-37, *supra*. Because Ioxus agrees that

indefiniteness should be deferred until after claim construction, "about" should be given its plain and ordinary meaning of "approximately." "Construing 'about' to mean 'approximately' aligns with the Federal Circuit's instructions that '[g]enerally claim terms should be construed consistently with their ordinary and customary meanings,' and that 'the specification must have sufficient clarity to put one reasonably skilled in the art on notice that the inventor intended to redefine the claim term.'" *Sun Pharm. Indus. Ltd. v. Saptalis Pharm.*, LLC, No. CV 18-648-WCB, 2019 WL 2549267, at *5 (D. Del. June 19, 2019) (citing *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005)).

### 4. Ioxus's Sur-Reply Position

CAP-XX's proposal to simply rewrite "about" as "approximately" does not resolve the parties' dispute regarding the indefiniteness of this term; it merely substitutes one synonym for another. "'[T]he word "about" does not have a universal meaning in patent claims, . . . the meaning depends upon the technological facts of the particular case.'" *Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs*., 476 F.3d 1321, 1326 (Fed. Cir. 2007) (citation omitted). Because the patents-in-suit provide no guidance as to how much variance is acceptable in the "about" terms and because CAP-XX has failed to point to any evidence—intrinsic or extrinsic—that could resolve this ambiguity, the claim terms are indefinite and the Court need not construe this term as CAP-XX requests. *See, e.g.*,

*Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.*, 540 F. Supp. 2d 1233, 1280 (M.D. Fla. 2008) (declining to construe "at least about 70 barrers/mm" based on the record presented by the parties).

## IV.   INDEFINITENESS

### 1.   CAP-XX's Opening Position

Indefiniteness requires a determination of whether a patent claim, when read in light of the specification and prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2124, (2014).  A determination of indefiniteness is premature because Ioxus has not identified its indefiniteness challenges on a claim element by claim element basis, so CAP-XX has no notice of the specific basis for Ioxus's defenses.  Nor have the parties conducted expert discovery or completed claim construction.  While "a determination of indefiniteness is necessarily intertwined to some degree with claim construction," courts have found determining indefiniteness prior to claim construction to be premature.  *See Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, No. 02-148 GMS, 2003 WL 124149, at *1 (D. Del. Jan. 13, 2003) ("it is clear that the court must first attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness.").  "[W]here extrinsic evidence of the perspective of someone skilled in the art is relevant to the

indefiniteness inquiry, it is appropriate to defer the indefiniteness determination until after the close of discovery." *Lifescan Scotland, Ltd. v. Shasta Techs., LLC*, No. 11-CV-04494-WHO, 2014 WL 11206411, at *3–4 (N.D. Cal. Nov. 10, 2014). Nevertheless, each of Ioxus's vague indefiniteness challenges are unavailing.  As a preliminary matter, Ioxus asserts in the Joint Claim Construction Chart that several claim terms are allegedly indefinite without setting forth any arguments in support thereof.  *See* D.I. 44-1, Joint Claim Construction Chart.  Ioxus's invalidity contentions, on the other hand, include indefiniteness arguments for only the claim term "figure of merit."  *See* Exhibit C hereto, Ioxus Amended Invalidity Contentions, pp. 11-12.  Any indefiniteness arguments presented by Ioxus during the claim construction proceedings that are outside the scope of its invalidity contentions should be rejected due to its failure to comply with the Amended Scheduling Order. *See e.g.*, *MorphoTrust USA, LLC v. United States*, 132 Fed. Cl. 419, 421 (2017) (denying leave to amend invalidity contentions to assert new indefiniteness challenges, where additional terms were not disclosed until claim construction and defendant had "no acceptable explanation" for why terms were not identified in invalidity contentions under the scheduling order).

With regard to the claim term "figure of merit," Ioxus first argues that the asserted patent claims are indefinite because they do not specify the temperature at which the FOM of a device is determined.  Exhibit C hereto, Ioxus Amended

Invalidity Contentions, p. 11. Ioxus argues that Dr. Miller's article acknowledged that FOM may be affected by lower temperature; therefore, the claims are indefinite for failing to specify the temperature.  Exhibit C, Ioxus Amended Invalidity Contentions, p. 11.  Ioxus's reliance on Dr. Miller's article is misplaced. Dr. Miller sought to present pulse power performance of electrochemical capacitors "using a consistent test method."  Miller Article, p. 1.  Under that "consistent test method," Dr. Miller evaluated seventeen (17) charge storage devices <u>at ambient temperature</u> and reported on their FOM.  D.I. 44-1, Joint Claim Construction Chart, Exh. C, Dr. Miller Article, p. 6.  Dr. Miller further evaluated three (3) of those devices at lower temperatures and cautioned that devices intended for use in a low temperature application should be evaluated at such temperature.  *Id.* at 9.  A skilled artisan reading Dr. Miller's report in its entirety would understand that the FOM determinations for the charge storage devices recited in the asserted patent claims are to be conducted at ambient temperature – there is no legal requirement that patent claims must state the obvious in order to satisfy the definiteness requirements of 35 U.S.C. § 112(2).  *See Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1334 (Fed. Cir. 2016) (holding that, although testing protocol "aims to find different viscosities over a range of temperatures" and "indicate[d] that viscosity varies with temperature," district court correctly discounted the protocol "to find that one of skill would understand

that room temperature is implied for a viscosity measurement with no specified temperature.").

Second, Ioxus argues in its Amended Invalidity Contentions that all asserted claims reciting the term "figure of merit" are indefinite because they are inoperable for alleging failing to recite an electrolyte. Exhibit C hereto, Ioxus Amended Invalidity Contentions, pp. 11-12. The plain language of the asserted claims recite "an electrolyte in which the cell is immersed." *See* D.I. 44-1, Exh. A, '034 patent, 31:34-35; 32:5-6; 32:40-42; 33:7-8; 33:39-40; 51:17-18; Exh. B, '600 patent, 31:7-8. Ioxus does not make this claim construction argument in the Joint Claim Construction Chart; hence, it is unclear whether it intends to do so during the claim construction proceedings. By failing to timely assert that claim construction argument, Ioxus waived it, as discussed above. In any event, the plain language of the asserted claims includes an electrolyte in which the cells are immersed; hence, Ioxus's indefiniteness argument is likewise unfounded on the merits.

Thirdly, Ioxus rehashed the argument in its motion for judgment on the pleadings regarding patentable subject matter (*see* D.I. 34), asserting that the claims are indefinite because they are allegedly defined by function and are unlimited by structure to obtain that function. Exhibit C hereto, Ioxus Amended Invalidity Contentions, pp. 11-12. Ioxus cites two cases in support of its argument, *Holland Furniture Co. v. Perkins Glue Co.*, 277 U.S. 245, 256–57 (1928) and

47

*Forest Labs., Inc. v. Teva Pharms. USA, Inc.*, 2017 WL 6311688, at *7 (Fed. Cir. 2017) (nonprecedential) (concurring opinion).

Ioxus's reliance on *Forest Labs., Inc. v. Teva Pharms. USA, Inc.*, 2017 WL 6311688 (Fed. Cir. Dec. 11, 2017) is similarly misplaced.  First, Ioxus cites the reasoning in a concurrent opinion, and the holding in the case is not applicable here, and in any event non-precedential.[13]  The concurrence argued the disputed term was indefinite because it "attempts to encompass an extended release formulation of memantine … without including any materials that cause the extended release."  *Id.* at *7.  This is wholly unlike the patents-in-suit include claims that are directed to improvements made by the named inventors on the patents-in-suit.  In addition, the specification of the patents-in-suit further describe improvements that result in a supercapacitor with lower impedance and higher power density with the additional limitation of a given, and it is those improvements that generate the favorable response time $T_0$, which in turn results in the desirable, claimed FOM properties for a storage device.  Still further, the FOM

---

[13] In *Forest Labs.*, the Court found the term in question was indefinite because the claim "require[d] that the concentration profile of the extended-release formulation and the concentration profile of the immediate-release formulation **be measured in human pharmacokinetic studies**," and a person of ordinary skill in the art "would not know, with reasonable certainty, **which 'human [pharmacokinetic] study' on which to rely** when considering whether a formulation of memantine might infringe."  *Id.*  at *4 (emphasis added).

is improved by reducing the weight and volume of the package, i.e., the entire device. (col. 31, lines 1 to 7, 14-23); *see also* '034 patent, Col 27 line 15 to 22.

In addition, because Ioxus basically repackaged its § 101 arguments under the guise of indefiniteness, CAP-XX respectfully incorporates by references the arguments contained in its answering brief and proposed sur-reply thereto.  (D.I. 36, 39-1).

### 2.    Ioxus's Answering Position

Ioxus understands that the Court does not normally address indefiniteness at the claim construction stage. (*See e.g., Genentech, Inc. v. Amgen, Inc.*, Case No. 17-1407-CFC, D.I. 345 (D. Del April 9, 2019); *HIP, Inc. v. Hormel Foods Corp.*, Case No. 18-615-CFC, D.I. 146 (D. Del April 2, 2019).) As such, Ioxus will not address its indefiniteness arguments in full at this stage, but intends to move for leave to file for early summary judgment pursuant to the Scheduling Order. (D.I. 30.) A summary of Ioxus's arguments follows for the Court's convenience.

### a.    "volumetric figure of merit" / "gravimetric figure of merit" / "figure of merit" / "gravimetric power maximum" / "volumetric power maximum" / "maximum operating voltage"

To avoid indefiniteness, a claim relying on a specific measurement must adequately specify the means of measurement to provide one of ordinary skill in the art certainty as to the metes and bounds of the claims. *See Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 630-35 (Fed. Cir. 2015) (finding

claim indefinite where multiple tests possible to determine a claimed parameter and the patent failed to indicate which test was applicable); *Teva Pharma. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341-45 (Fed. Cir. 2015) (same). CAP-XX's asserted claims rely heavily on calculations derived from formulas utilizing numerous measured variables. (*See, e.g.,* '034 patent at claim 1 (reciting volumetric figure of merit); *id.* at claim 13 (same); *id.* at claim 23 (reciting gravimetric power maximum); *id.* at claim 42 (same); *id.* at claim 34 (reciting volumetric power maximum); *id.* at 51 (reciting gravimetric figure of merit).) Because the patents-in-suit fail to adequately specify the means for measuring certain of these variables, the ultimate question of whether or not a given storage device infringes is left entirely up to the subjective determination of the individual measuring the device.

For example, Dr. Miller's own experiments explicitly recognize that the determination of figure of merit is dependent on temperature. (Miller at 6, 9, Table II.) Dr. Miller also recognized that "[d]iscernible differences [in temperature effects] are evident among the products, which ***may be important in some applications***." (Miller at 9 (emphasis added).) Indeed, based on Dr. Miller's calculations, CAP-XX's own capacitors would both fall inside and outside the claimed ranges dependent on the temperature of measurement:

| EC PRODUCT Temperature | E/M (J/g) | E/v (J/cm³) | Response time (s) | Mass FOM (W/g) | Volume FOM (W/cm³) |
|---|---|---|---|---|---|
| cap-xx 10 F 25 C | 0.54 | 0.61 | 0.15 | 3.6 | 4.1 |
| 0 C | 0.38 | 0.43 | 0.14 | 2.7 | 3.1 |
| -20 C | 0.26 | 0.29 | 0.15 | 1.7 | 1.9 |
| -40 C | 0.12 | 0.13 | 0.10 | 1.2 | 1.3 |

(Miller at Table II.)

At 25º C, the above capacitor falls within the infringing range of both claim 1 and claim 51 of the '034 patent. At 0º C, it would no longer infringe claim 1 under CAP-XX's own proposed construction, but would still infringe claim 51. At -20º C, it infringes neither. "In other words, a given embodiment would simultaneously infringe and not infringe the claims, depending on the particular [temperature] chosen for analysis. . . . That is the epitome of indefiniteness." *Geneva Pharma., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003).

At least because Dr. Miller's figure of merit is dependent on the temperature of a given measurement, and the patents-in-suit are silent as to what temperature should be used, the asserted claims are indefinite. Ioxus welcomes the opportunity to fully address indefiniteness in a motion for early summary judgment and will file a motion for leave to so move.

### b.    "about"

Although terms of degree may be used to avoid strict numerical requirements, the Federal Circuit has made clear that "when a word of degree is

used, the patent's specification must provide some standard for measuring that degree to be definite." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1372 (Fed. Cir. 2008) (internal quotations and modifications omitted). Here, the patents-in-suit provide no guidance whatsoever as to how one should determine the acceptable range of degree. Without guidance, an accused infringer has no way to ascertain with certainty whether or not their accused device actually falls within the scope of the claims of the patents-in-suit.

In this case, for example, does a volumetric figure of merit of 3.1 Watts/cm$^3$ fall within claim 1 of the '034 patent's "greater than about 3.2 Watts/cm$^3$" range? What about 3.0 Watts/cm$^3$? Does a volumetric figure of merit of 5.0 Watts/cm$^3$ fall within ***both*** claim 5 and claim 6? The patents-in-suit provide no means of answering these questions and leave would-be infringers guessing as to the scope of the claims. This is textbook indefiniteness. *See, e.g., Amgen, Inc. v. Chugai Pharma. Co., Ltd.*, 927 F.2d 1200, 1217-18 (Fed. Cir. 1991) (finding "about 160,000 IU/AU" term indefinite where patent provided no guidance as to acceptable range and prior art existed close to claimed range); *Synthes (USA) v. Smith & Nephew, Inc.*, 547 F. Supp. 2d 436, 454-55 (E.D. Pa. 2008) (finding term "less than about 2%" indefinite); *Integra LifeSciences Corp. v. HyperBranch Med. Tech. Co.*, No. 15-819-LPS-CJB, 2017 WL 5172396 (D. Del Nov. 8, 2017) (finding "more than about four residues in number" indefinite).

CAP-XX clearly chose to use the imprecise qualifier "about" in an effort to capture as broad a scope within its claims as possible. Although use of "about" is permissible under the law, CAP-XX failed to hold up its end of the bargain and provide some means of precision. As such, the claims reciting "about" leave Ioxus—and the public—in the dark about the actual scope of the patents-in-suit. Ioxus again welcomes the opportunity to more fully address these issues in its contemplated motion for early summary judgment.

### 3.     CAP-XX's Reply Position

Finally, the parties agree that the Court should defer determination of Ioxus's indefiniteness arguments until after claim construction.  *See* pages 3, 49, *supra*.  Although indefiniteness is a matter of claim construction, it is a separate issue that can be decided at summary judgment and even post-trial.  *See f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, 388 F. Supp. 3d 362, 363 (D. Del. 2019) (after denying summary judgment on indefiniteness, this Court decided indefiniteness solely based on post-trial briefing).  This District often declines to address indefiniteness at the claim construction stage, "particularly when the indefiniteness argument concerns relative terms like "about."  *See e.g. Ansell Healthcare Prod. LLC v. Reckitt Benckiser LLC*, No. 15-CV-915 (RGA), 2017 WL 1021844, at *2 (D. Del. Mar. 16, 2017) (construing "about' to mean "approximately," declining to decide indefiniteness, and noting that the

defendant's argument that "about" is indefinite was "dubious" because the "definiteness requirement ... recogniz[es] that absolute precision is unattainable") (internal citations omitted); *Glaxosmithkline LLC*, No. CV 14-877-LPS-CJB, 2016 WL 3186657, at *18 (D. Del. June 3, 2016), *report and recommendation adopted sub nom. GlaxoSmithKline LLC v. Glenmark Pharm., Inc.*, No. CV 14-877-LPS-CJB, 2017 WL 658468 (D. Del. Feb. 17, 2017) (declining to decide indefiniteness in claim construction order, because "the issue of whether the disputed term renders claim 8 indefinite is one best resolved during the summary judgment stage of the case");  *DePuy Synthes Prod., LLC v. Globus Med., Inc.*, No. CA 11-652-LPS, 2013 WL 1897833, at *12 (D. Del. May 7, 2013) ("the Court declines to make a final determination as to indefiniteness in the context of this claim construction dispute"); *Alcon Research, Ltd. v. Barr Labs. Inc.*, No. 09-CV-0318-LDD, 2011 WL 3901878, at *16 (D. Del. Sept. 6, 2011) ("We find that the indefiniteness issue is best decided at trial and defer consideration on it until that time.").

Ioxus admits it has not fully identified the bases for its indefiniteness challenges and has reserved the right to raise indefiniteness after claim construction. *See* page 49, *supra* ("Ioxus will not address its indefiniteness arguments in full at this stage, but intends to move for leave to file for early

summary judgment"). CAP-XX respectfully seeks leave to respond to those arguments if and when discrete arguments are raised.

### 4. Ioxus's Sur-Reply Position

As explained in further detail in its responsive brief, Ioxus intends to move for leave to file for early summary judgment of indefiniteness pursuant to the Scheduling Order. (Pages 49-53, *supra).*

## V. CONCLUSION

### 1. CAP-XX's Opening Conclusion

None submitted.

### 2. Ioxus's Answering Conclusion

For the foregoing reasons, Ioxus respectfully requests that the Court reject CAP-XX's unhelpful constructions and, if it is so inclined, grant Ioxus leave to file a proposed briefing schedule for early summary judgment of indefiniteness.

### 3. CAP-XX's Reply Conclusion

None submitted.

### 4. Ioxus's Sur-Reply Conclusion

For the foregoing reasons, Ioxus respectfully requests that the Court reject CAP-XX's unhelpful constructions and, if it is so inclined, grant Ioxus leave to file a proposed briefing schedule for early summary judgment of indefiniteness.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  */s/ Philip A. Rovner*

Jason P. Mueller
Michelle Chatelain Fullmer
ADAMS AND REESE LLP
701 Poydras St., Ste. 4500
New Orleans, LA 70139
(504) 581-3234

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

Chris P. Perque
ADAMS AND REESE LLP
1221 McKinney St., Ste. 4400
Houston, TX 77010
(713) 308-0167

*Attorneys for Plaintiff*
*CAP-XX, Ltd.*

Maia T. Woodhouse
ADAMS AND REESE LLP
Fifth Third Center
424 Church Street, Suite 2700
Nashville, TN 37219
(615) 259-1085

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)

OF COUNSEL:

Erik B. Milch
COOLEY LLP
11951 Freedom Drive
Reston, VA  20190
(703) 456-8000

Stephen Crenshaw
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-240
(202) 842-7800

Dated:  September 30, 2019
6420113

Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendant*

# WORD COUNT CERTIFICATIONS

## CAP-XX'S OPENING BRIEF

### CERTIFICATE REGARDING WORD COUNT

Pursuant to the Section 9 of the Amended Scheduling Order (D.I. 32) undersigned counsel certifies that the text of the foregoing brief in in Times New Roman 14 point font and the word count for the brief is less than 5000 words as determined using the Microsoft Word word processing application used to prepare the brief.

*/s/ Philip A. Rovner*

## IOXUS'S ANSWERING BRIEF

### CERTIFICATION

This brief complies with the typeface, type style requirements, and word limitations set forth in Paragraph 9 of the Amended Scheduling Order (D.I. 32), because it contains 2,389 words as determined by the Word Count feature of Microsoft Word and the text of this brief is in 14-point Times New Roman.

/s/ Michael J. Flynn

Michael J. Flynn (#5333)

**CAP-XX'S REPLY BRIEF**

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Pursuant to the Section 9 of the Amended Scheduling Order (D.I. 32) undersigned counsel certifies that the text of the foregoing brief in in Times New Roman 14 point font and the word count for the brief is less than 5000 words as determined using the Microsoft Word word processing application used to prepare the brief.

<em>/s/  Philip A. Rovner</em>

**IOXUS'S SUR-REPLY BRIEF**

## <u>CERTIFICATION</u>

This brief complies with the typeface and the type style requirements, and word limitations set forth in Paragraph 9 of the Amended Scheduling Order (D.I. 32), because it contains 1,304 words as determined by the Word Count feature of Microsoft Word and the text of this brief is in 14-point Times New Roman.

/s/ *Michael J. Flynn*

Michael J. Flynn (#5333)